UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

RYAN DUCATI,

Plaintiff,

v.

PEPSICO BEVERAGE SALES, LLC
d/b/a PEPSICO BEVERAGES,

Defendant.

CASE NO. 1:26-cv-2341

Hon.

# COMPLAINT AND JURY DEMAND

## COMPLAINT

Plaintiff Ryan Ducati, by and through his attorneys, Pinsky Smith, PC, states as follows:

## JURISDICTION, VENUE, AND PARTIES

1. This is an action requesting the Court to remedy violations of Title VII of the Civil Rights Act of 1964 ("Title VII", 42 U.S.C. § 2000e *et seq.* and factually related violations of the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.*

2. Jurisdiction and venue are proper in this Court.

3. Plaintiff is an Asian, homosexual male resident of Lake County, within the Western District of Michigan.

4. PepsiCo Beverages is a corporation which operates throughout North America, with a physical office in Walker, Michigan, located in the Western District of Michigan.

5. PepsiCo was at all relevant times for this action Plaintiff's employer.

6. The acts that are the subject of this action occurred in the Western District of Michigan.

## FACTUAL ALLEGATIONS

7. PepsiCo hired Mr. Ducati as a merchandiser in May 2024.

8. In or around fall of 2024, PepsiCo promoted Mr. Ducati to a sales representative position. In that role, Mr. Ducati was responsible for stocking PepsiCo products at stores within his assigned territory.

9. Walmart's Whitehall, Michigan store ("Whitehall Walmart") sells PepsiCo products pursuant to a business relationship with PepsiCo.

10. The Whitehall Walmart was within Mr. Ducati's assigned territory. Accordingly, PepsiCo required him to service the store and stock it with PepsiCo products.

11. Shortly after Mr. Ducati began servicing the Whitehall Walmart, he began experiencing harassment from the store manager, Dario Lalane, which Mr. Ducati believed was based on his race and sexual orientation.

12. Mr. Lalane began targeting Mr. Ducati, harassing him, making comments about and towards him based on his race and sexual orientation.

13. For example, he referred to Plaintiff as that "Asian boy with Pepsi," he

stated that as a Haitian man, he was superior to Plaintiff, he made explicit references to sex acts, and he or someone else from the store called Mr. Ducati a "fagot."

14. Mr. Lalane's conduct escalated beyond verbal harassment. On multiple occasions, Mr. Lalane confronted Mr. Ducati at close range, grabbed his arm, and threatened him.

15. Mr. Ducati repeatedly reported Mr. Lalane's conduct to PepsiCo. In those reports, Mr. Ducati explained that he believed Mr. Lalane was targeting and discriminating against him because of his race and sexual orientation.

16. Despite receiving these reports, PepsiCo did not take effective action to stop the conduct, protect Mr. Ducati, or remove the Whitehall Walmart from his assigned territory. PepsiCo continued requiring Mr. Ducati to service the store.

17. In at least as early as mid-December, Mr. Ducati began reporting his concerns to his manager, Erik Gibson.

18. On or about December 26, 2024, Mr. Ducati submitted a written report to PepsiCo concerning the harassment and hostile conduct he was experiencing at the Whitehall Walmart.

19. In mid to late January of 2025, Mr. Ducati again reported his concerns to PepsiCo Human Resources, talking with representative Madeline Joseph. During that conversation, Mr. Ducati specifically asked PepsiCo to remove the Whitehall Walmart from his assigned territory so that he would no longer be required to interact with Mr. Lalane.

20. On or about February 4, 2025, Mr. Ducati submitted another report to PepsiCo concerning the conduct he was experiencing at the Whitehall Walmart.

21. During these discussions, Mr. Gibson told Mr. Ducati that he knew Mr. Lalane had been harassing him and did not want him in the store. Nevertheless, Mr. Gibson continued requiring Mr. Ducati to service the Whitehall Walmart.

22. After PepsiCo failed to stop the conduct or remove him from the store, Mr. Ducati reported Mr. Lalane's conduct directly to Walmart by submitting comments through Walmart's customer surveys.

23. On or about February 5, 2025, Mr. Ducati again met with Mr. Gibson and this time PepsiCo District Manager Jacob Teliczan as well. During that meeting, Mr. Ducati again reported the discrimination, harassment, threats, and physical conduct he had experienced at the Whitehall Walmart.

24. During the February 5 meeting, Mr. Teliczan told Mr. Ducati that PepsiCo would not take action concerning Mr. Lalane because Mr. Lalane was the only African American store manager in the district and Walmart was too important of a customer.

25. Mr. Teliczan also told Mr. Ducati that PepsiCo knew Mr. Ducati had complained directly to Walmart about Mr. Lalane through Walmart's customer surveys.

26. PepsiCo did not take action to protect Mr. Ducati or prevent further contact with Mr. Lalane. Instead, PepsiCo terminated Mr. Ducati's employment.

27. On February 11, 2025—six days after the meeting described above—

PepsiCo terminated Mr. Ducati's employment without prior warning.

28. In explaining its decision, PepsiCo characterized Mr. Ducati's complaints to Walmart about Mr. Lalane's conduct as "unprofessional behavior" and explicitly relied on those complaints as a reason for terminating him.

29. In April 2025, Mr. Ducati filed a charge of discrimination with the Michigan Department of Civil Rights ("MDCR").

30. On February 18, 2025, Mr. Ducati appealed his termination through PepsiCo's internal appeal process.

31. PepsiCo denied Mr. Ducati access to review by a third-party decisionmaker, even though company policy provided for such review.

32. On April 10, 2025, in conversation with PepsiCo representative Tori Fecteau, PepsiCo offered to re-hire Mr. Ducati in a different location.

33. Shortly thereafter, PepsiCo withdrew the offer.

34. Upon information and belief, PepsiCo learned of Mr. Ducati's MDCR charge before withdrawing the offer and withdrew the offer because he had filed that charge.

## Statutory Prerequisite

35. Plaintiff filed a charge of discrimination with the MDCR within 300 days of the commission of the unlawful employment practice alleged herein.

36. Plaintiff received a Notice of Right to Sue from the EEOC prior to initiating this lawsuit.

37. This action has been filed 90 days of the receipt of Plaintiff's Notice of Right to Sue.

## COUNT I – Violation of Title VII of the Civil Rights Act of 1964 – Race Discrimination and Retaliation

38. Plaintiff relies on the allegations of all prior paragraphs as if they were restated herein.

39. Plaintiff was subjected to unwelcome harassment based on his race and sex, including his sexual orientation, while performing his assigned duties at the Whitehall Walmart.

40. Defendant knew or should have known about the harassment because Plaintiff repeatedly reported it to his supervisors and Human Resources and requested that Defendant remove the Whitehall Walmart from his assigned territory.

41. Despite receiving notice of the harassment, Defendant failed to take prompt and appropriate corrective action reasonably calculated to end it. Instead, Defendant continued requiring Plaintiff to service the Whitehall Walmart and interact with Mr. Lalane.

42. Plaintiff engaged in activity protected by Title VII when he made good-faith complaints to Defendant, Walmart, and subsequently the EEOC concerning conduct that he reasonably believed constituted discrimination and harassment based on his race and sexual orientation.

43. Defendant knew that Plaintiff had made these complaints.

44. Defendant thereafter subjected Plaintiff to materially adverse employment actions, including terminating his employment and, after learning of the MDCR charge, withdrawing its offer to rehire him.

45. Defendant violated Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e, when it failed to take any action to prevent or stop the unlawful conduct of its vendor against Plaintiff, permitted discrimination and harassment against and Plaintiff, and subsequently terminated (and withdrew the offer to rehire) him in retaliation for his complaints of the unlawful treatment.

46. Defendant's purported reason for terminating Plaintiff and taking various other adverse employment actions against him is pretext for illegal discrimination and retaliation.

47. Plaintiff has suffered irreparable harm, in that he has been unlawfully terminated, and he has suffered significant financial losses as a result. He will continue to suffer such harm unless the relief requested herein is granted.

## COUNT II –Violation of the Elliott-Larsen Civil Rights Act – Race Discrimination and Retaliation

48. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

49. Plaintiff was subjected to unwelcome harassment based on his race and sex, including his sexual orientation, while performing his assigned duties at the Whitehall Walmart.

50. Defendant knew or should have known about the harassment because Plaintiff repeatedly reported it to his supervisors and Human Resources and requested that Defendant remove the Whitehall Walmart from his assigned territory.

51. Despite receiving notice of the harassment, Defendant failed to take

prompt and appropriate corrective action reasonably calculated to end it. Instead, Defendant continued requiring Plaintiff to service the Whitehall Walmart and interact with Mr. Lalane.

52. Plaintiff engaged in activity protected by ELCRA when he made good-faith complaints to Defendant, Walmart, and subsequently the EEOC concerning conduct that he reasonably believed constituted discrimination and harassment based on his race and sexual orientation.

53. Defendant knew that Plaintiff had made these complaints.

54. Defendants violated the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.*, when it failed to take any action to prevent or stop the unlawful conduct of its vendor against Plaintiff, permitted discrimination and harassment against and Plaintiff, and subsequently terminated him (and withdrew the offer to rehire) in retaliation for his complaints of the unlawful treatment.

55. Defendant's purported reasons for terminating Plaintiff and taking various other adverse employment actions against him are pretext for illegal discrimination and retaliation.

56. Plaintiff has suffered irreparable harm, in that he has been unlawfully terminated, and he has suffered significant financial losses and non-economic damages as a result. He will continue to suffer such harm unless the relief requested herein is granted.

## RELIEF SOUGHT

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Award Plaintiff economic damages in an amount designed to make him whole and replace that which was denied or lost to him by reason of violations of law by Defendants.

B. Order that Plaintiff be reinstated;

C. Award Plaintiff compensatory damages for mental anguish and emotional distress;

D. Award Plaintiff exemplary damages;

E. Award Plaintiff costs and reasonable attorney fees;

F. Award Plaintiff such other relief as may be just and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: August 14, 2026

By: /s/ Crystal Bultje
Crystal J. Bultje
146 Monroe Center, N.W., Suite 418
Grand Rapids, MI 49503
(616) 451-8496
cbultje@pinskysmith.com

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: August 14, 2026

By: /s/ Crystal Bultje

Crystal J. Bultje
146 Monroe Center, N.W., Suite 418
Grand Rapids, MI 49503
(616) 451-8496
cbultje@pinskysmith.com